DANIEL M. CHAMBERLAIN & another *vs.* GEORGE B. PERRY.

Worcester.    Oct. 1, 1884. — Feb. 27, 1885.    C. ALLEN & COLBURN, JJ.,
absent.

The owner of an equity of redemption of land, not in possession, and not entitled
to possession, as against an equitable assignee of the mortgage, cannot maintain
an action, on the Gen. Sts. *c.* 137, to recover such possession, against one who
originally entered as his tenant under a lease for a year, but who, before the
expiration of the year, took a lease from the equitable assignee of the mort-
gage, and who, at the time of the bringing of the action, which was after the
expiration of the year, was in possession under the latter lease.

ACTION on the Gen. Sts. *c.* 137, by Daniel M. Chamberlain
and Eliza C. Goodell, to recover a parcel of land in Southbridge.
Writ dated November 19, 1881.   The case was submitted to the
Superior Court, and, after judgment for the plaintiffs, to this
court, on appeal, upon agreed facts, in substance as follows :

On March 18, 1864, the plaintiff Eliza C. Goodell purchased
and took a deed of the demanded premises, and on June 1, 1874,
purchased and took a deed of a pasture lot adjoining the same.
On March 20, 1874, Goodell gave a mortgage of the demanded
premises to the Southbridge Savings Bank to secure her promis-
sory note for $600, payable on demand.   On August 22, 1876,
Goodell gave a second mortgage to said bank, which embraced
the demanded premises and the pasture lot, to secure $400,
payable on demand.   All said deeds and mortgages were duly
recorded.

On May 16, 1877, Andrew M. Chamberlain, in an action in
the name of Daniel M. Chamberlain, attached all the real es-
tate of Goodell, which action was duly entered in the Superior
Court.

On October 29, 1877, Lorenzo Plimpton, in an action against
Goodell, attached all her real estate, which action was duly
entered; and on February 21, 1879, he obtained a judgment in
said action for $1017.51, debt, and $72.38, costs, upon which
judgment an execution was issued, dated March 7, 1879, and
was placed in the hands of one Thayer, a deputy sheriff.

On March 26, 1879, Chamberlain obtained a judgment in his
action for $884.68, debt, and $103.18, costs, and execution was
issued thereon, dated April 24, 1879.   Afterwards Thayer levied

Chamberlain's execution and advertised for sale the right in equity which Goodell had in the real estate described in said first mortgage, and conveyed the demanded premises only, and in his return set forth that he had sold the equity of redemption which Goodell had, above said first mortgage, to Plimpton, and gave to Plimpton a sheriff's deed so describing the same, which was duly recorded. Afterwards Thayer proceeded to levy Plimpton's execution, and advertised to sell all the equity of redemption which Goodell had in the real estate described in said second mortgage, and made a return that he sold " the same estate, or a part thereof," to Plimpton, but only described the pasture lot in his deed.

Plimpton thereupon entered into possession of all said premises, claiming to hold the same by virtue of said levies, sales, and sheriff's deeds, and on June 29, 1879, paid to said bank both the mortgages, amounting to $1063.49, and took the same into his hands, with discharges duly signed and acknowledged.

On November 12, 1881, Plimpton filed a bill in equity, setting forth the above facts, claiming to be the owner by virtue of said levies, but, if not, asking that he might be decreed to be the equitable assignee of said mortgages; and he was decreed to hold the same as equitable assignee, subject to an accounting for the rents and profits.

On February 15, 1879, Goodell gave to this defendant a lease of all said premises for the term of one year, and he entered into possession under the same. On February 1, 1880, Plimpton, claiming to be the owner of all said premises by virtue of said levies and sales, gave to the defendant a lease of all said premises, and he has been in possession thereof since that time, claiming to be the tenant of Plimpton, and refusing to acknowledge the plaintiff's title.

On May 7, 1879, Goodell gave to J. M. Cochran and Daniel M. Chamberlain, severally, mortgages covering said pasture lot, which mortgages have been foreclosed. See *Cochran* v. *Goodell,* 131 Mass. 464, in which case the last-named levy and sale were held to be void.

On January 5, 1881, Goodell sold and conveyed to Chamberlain all her interest in the demanded premises, except her homestead rights in the same.

On July 18, 1882, these plaintiffs and Cochran brought a bill in equity to redeem both of said mortgages, and for an account of rents and profits, and on May 19, 1883, obtained a decree against Plimpton, directing him to discharge said mortgages and pay the plaintiffs therein the sum of $1401.16, and interest from May 10, 1883, upon which decree execution has been issued and paid.

Plimpton also filed a bill in equity against these plaintiffs, setting forth that Chamberlain held said lands on a secret trust for the benefit of Goodell, that his claim against Goodell was unsatisfied, and asking that a receiver might be appointed to sell said real estate and apply the proceeds thereof to the satisfaction of his said judgment; but, upon demurrer, said bill was dismissed, with costs.

Plimpton, at June term, 1883, brought a writ of *scire facias* in this court against Goodell, which is now pending.

*T. G. Kent*, for the defendant.

*F. P. Goulding & J. M. Cochran*, for the plaintiffs.

FIELD, J. We assume that both levies were void for the reason given in *Cochran* v. *Goodell*, 131 Mass. 464. From June 29, 1879, the time Plimpton paid the mortgages, up to May 19, 1883, when a decree was obtained directing him to discharge the mortgages, he was the equitable assignee of both mortgages, and lawfully in possession as such, receiving the rents and profits. The fact that he first entered into possession claiming as owner under the levies, even if the claim proved to be unfounded, does not preclude him from setting up his title under the mortgages, when acquired, as justifying his possession; and he has accounted to these plaintiffs in their suit in equity for rents and profits received as mortgagee in possession from a time long anterior to the bringing of this action.

On November 19, 1881, the date of the writ in this action, these plaintiffs, or one of them, owned the equity of redemption of the premises subject to these two mortgages, but they had no right to the possession as against Plimpton, and were not in actual possession. On February 15, 1879, this defendant took a written lease of the premises for one year from Goodell, and entered into possession under it; before the year expired, on February 1, 1880, the defendant took a written lease of Plimpton,

who claimed to be the owner, and he has been in possession since that time, claiming to be the tenant of Plimpton. When this action was brought, which was nearly two years after the expiration of the lease from Goodell, the defendant was not a tenant of the plaintiffs, or either of them, but he was a tenant of Plimpton, who had the possession in fact, and rightfully as against these plaintiffs, and so had this defendant as his tenant. The doctrine that a tenant, so long as he continues in possession under a lease, cannot deny the lessor's title at the time of making the lease, has no application to the case.

*Judgment for the defendant.*